Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

| | |
|---|---|
| RIVERBED TECHNOLOGY, INC., )<br>　　　　　　　　　　　　　　)<br>　　　　　　　Plaintiff,　　)<br>　　　v.　　　　　　　　　　)<br>　　　　　　　　　　　　　　)<br>REALTIME DATA, LLC,　　　　)<br>　　　　　　　　　　　　　　)<br>　　　　　　　Defendant.　　)<br>_____) | NO. 3:17-cv-03182-EMC |
| )<br>REALTIME DATA, LLC,　　　　)<br>　　　　　　　　　　　　　　)<br>　　　　　　　Plaintiff,　　)<br>　　　v.　　　　　　　　　　)<br>　　　　　　　　　　　　　　)<br>NETGEAR, INC.,　　　　　　　)<br>　　　　　　　　　　　　　　)<br>　　　　　　　Defendant.　　)<br>_____) | NO. 3:17-cv-06397-EMC |
| )<br>REALTIME DATA, LLC,　　　　)<br>　　　　　　　　　　　　　　)<br>　　　　　　　Plaintiff,　　)<br>　　　v.　　　　　　　　　　)<br>　　　　　　　　　　　　　　)<br>BARRACUDA NETWORKS, INC., )<br>　　　　　　　　　　　　　　)<br>　　　　　　　Defendant.　　)<br>_____) | NO. 3:17-cv-06701-EMC<br><br>San Francisco, California<br>Thursday, January 25, 2018 |

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

FTR 10:38 a.m. - 11:06 a.m. =  28 minutes

(Appearances on following page.)

Transcribed by:　　　　　Leo T. Mankiewicz, Transcriber
　　　　　　　　　　　　　leomank@gmail.com
　　　　　　　　　　　　　(415) 722-7045

**APPEARANCES**:

For Plaintiff Riverbed Technology, Inc.:

     Haynes and Boone, LLP
     2323 Victory Avenue, Suite 700
     Dallas, Texas  75219
   BY:  **JOHN RUSSELL EMERSON, ESQ.**

For Plaintiff Realtime Data, LLC:

     Russ, August & Kabat
     12424 Wilshire Boulevard, 12th Floor
     Los Angeles, California  90025
   BY:  **PAUL A. KROEGER, ESQ.**

For Defendant Netgear, Inc.:

     Winston & Strawn
     1700 K Street, N.W.
     Washington, D.C.  20006
   BY:  **J. MICHAEL WOODS, ESQ.**

For Defendant Barracuda Networks, Inc.:

     Durie Tangri LLP
     217 Leidesdorff Street
     San Francisco, California  94111
   BY:  **RYAN M. KENT, ESQ.**

Thursday, January 25, 2018

10:38 a.m.

P R O C E E D I N G S

(Transcriber's Note:  Due to the failure of counsel to identify themselves when speaking on the record, some speaker identifications were accomplished by best guess.)

THE CLERK:  Calling case C17-3182 Riverbed Technology versus Realtime, C17-6397, Realtime Data versus Netgear, and C17-6701, Realtime versus Barracuda.

Counsel, please come to the podium and state your name for the record.  Please state your name before you speak.

MR. KROEGER:  Good morning, your Honor.  Paul Kroeger for real time.

THE COURT:  Thank you, Mr. Kroeger.

MR. WOODS:  Good morning, your Honor.  Michael Woods for Netgear.

THE COURT:  All right, thank you, Mr. Woods.

MR. EMERSON:  Your Honor, Russ Emerson for Riverbed.

THE COURT:  Thank you, Mr. Emerson.

MR. KENT:  Good morning, your Honor.  Ryan Kent on behalf of the defendant Barracuda.

THE COURT:  All right, thank you, Mr. Kent.

Now, I had set -- I think we previously set a claim construction schedule that looked towards an actual hearing in August, and I've gone through the -- your statement proposing

how we might go about with a consolidated or coordinated claim construction process involving all the parties, but now I've received a kind of intervening motion to stay in view of the *inter partes* review instituted by the PTAB.

Now, I know that's set for a hearing March 1st, but before we -- obviously, you know, if we -- given the relative speed by which we're trying to accomplish claim construction here, it seems like this is something that should be talked about sooner rather than later.

**MR. KENT:**  Your Honor, Ryan Kent for the defendant Barracuda.

**THE COURT:**  Yeah.

**MR. KENT:**  I intended to raise this to your Honor's attention, if you hadn't managed to see the docket already this morning.

Just a little background.  In the initial case management conference that was served, Barracuda promised that it would be moving to stay.  Promptly, there was a meet-and-confer with the plaintiffs over that.  On December 12th, there was a request from the plaintiff to us that we provide them a proposed stipulation as to a stay.  We provided that, and we didn't hear much.

Ultimately, on January 16th, we heard from plaintiff that they wouldn't agree to the proposed stipulation of a stay, and therefore, eight days later, we filed our motion.

I just offer that as a little timing, so the Court doesn't think that we essentially just filed this at the last minute right before this hearing.

With respect to the efficiencies, I think your Honor is entirely correct that should the Court grant the motion to stay, it would substantially simplify the claim construction process.  Defendant Barracuda is the current moving party, but in addition to that, it is my understanding that Netgear, to the extent that settlement discussions do not resolve in the resolution of their case, will also join in the motion to stay; and those are the two defendants that have the four patents alleged against them, which are referred to as the "common patents" in the proposals before the Court.

**THE COURT:**  And so I understand the status and timing of the IPR proceedings, it appears that the first written final decisions that are due May 1st and May 30th of this year are on the '530 and the '728.

**MR. KENT:**  That is my recollection, your Honor, but the chart, with those --

**THE COURT:**  Yeah, I'm reading from the chart, and that's based on the Dell, et al. petition and the Riverbed petition.  I guess there are others.

How does that work, when you've got now four petitions, many with overlapping challenged claims, and you have varying dates of written decision, May, August, April of

next year, December of next year.  What happens with...?
I mean --

MR. KENT:  In some instances, the Patent Office will consolidate petitions when it can do so, if there's different art or if they're filed at different times.  Because there's been a series of litigations filed in this case, the Patent Office will consider them in sequence.

With respect to --

THE COURT:  So if a decision is issued on May 30th on Claims 1 through 10, and there's a finding of invalidity, what does -- what do they do with the three other --

UNIDENTIFIED SPEAKER:  My understanding, if they're outstanding claims that have not yet been found --

THE COURT:  They look at the outstanding claims.  So by the time you get to the last one, the Veritas one, there may not be much left.

MR. KENT:  It is correct that if all of the petitions result in a finding of unpatentability, there will be no claims asserted against Barracuda against this litigation, should the Federal Circuit affirm that finding by the PTAB, the Patent Office.

THE COURT:  I'm just asking, given the series of four petitions in which IPR proceedings have been instituted, there's -- for instance, the Veritas one, exactly the same claims are being challenged as in the Dell EMC one, but that

one's not scheduled to be heard for final decision until December 18th, as opposed to May 30th for the first.

So I'm just curious, if the decision is rendered on May 30th, what happens something like the Veritas proceeding?

MR. KENT:  So if the decision invalidates or renders unpatentable the asserted -- the challenged claims there, my understanding is that there's no reason for the PTAB to go forward and reconsider that, because those claims would have already been held unpatentable.

THE COURT:  Now, if they're held to be patentable, their second bite at the apple?

MR. KENT:  It's not a second bite at the apple, because it is a separate petition which has been instituted, and I believe on different art.  I'd need to go back --

THE COURT:  Oh, well, I guess that's a question.

MR. KENT:  Yeah.  My understanding is, I would need to go back and double-check that, but there is a separate grounds for the challenge of patentability in order for the PTAB to essentially institute a second petition.

And in the past, if the Patent Office believes that another petition is somehow completely duplicative, it won't institute that particular request for --

THE COURT:  Well, the fact that it's been instituted in the case is it perhaps prior, different art?

MR. KENT:  Yes, that it presents a separate question

of validity.

THE COURT:  Okay.

MR. KENT:  Statistics are that in -- when you look at the most recent PTAB statistics, if I'm remembering this correctly, it's 81 percent of the instituted decisions have at least one claim that is either cancelled by the patent owner's action, or that is rendered unpatentable by the PTAB.

THE COURT:  And how long -- how long of a stay are you -- in light of this table, what is your request?

MR. KENT:  So, your Honor, the request as it stands would be -- the request, I think, is, we can have a discussion about what makes sense with respect to the length of the stay.

A lot of times what I have seen happen, which I think is perhaps what should occur in this case, is that the stay extends a period of time, and then we come in front of the Court essentially for a status conference at that point in time and update the Court with what the results from the -- from the particular IPR petition has been, and then at that point, there can be a decision made whether there are further efficiencies in waiting or whether at that point the case should restart.

THE COURT:  And would you suggest that a logical point for that would be the first three dates, or May 1st and May 30th, on the '530 and the '728, because after that, there's a fairly big gap in X decision tree, '728's August of 2018, and for the '908 and the '204, it's not until January and March of

2019.

**MR. KENT:**  I think that would make sense, especially if this Court is considering postponing the claim construction process in general.

**THE COURT:**  Of course, we'll also probably have heard from the Supreme Court by that date.

**MR. KENT:**  Yes.

**THE COURT:**  What are your thoughts about -- I know this has been just filed.  I'd like to hear your thoughts about, for instance, a stay until early June.

**MR. KROEGER:**  I think Realtime believes it's premature to discuss a stay, largely because there are certain asserted claims for at least three of the patents for which no institution decision has been made yet.  So for 17 and 25 of the '728 patent, 18, 19 --

**THE COURT:**  Seventeen and 25, you say?

**MR. KROEGER:**  Correct, 17 and 25 of the '728.

**THE COURT:**  The 25 appears to be in the *CommVault* petition.

**MR. KROEGER:**  They have filed a petition, but there's been no institution decision on that yet.

**THE COURT:**  Oh.

**MR. KROEGER:**  My understanding --

**THE COURT:**  That's expected by April 5th.

**MR. KROEGER:**  Correct.

THE COURT:  Okay.

MR. KROEGER:  And with regards to the '530, again, although CommVault has filed a petition, there has been no institution decision yet on leaving at least Claims 18, 19 and 20 of the '530 presently not subject to an IPR; same for the '908, Claims 21, 22 and 25.  Although CommVault's filed a petition, there's been no institution decision yet.

We are -- Realtime is optimistic about the '530 patent, because on October 31st of last year, we received a decision denying -- a final written decision denying the IPR on all asserted claims for the '908, and the '908 is broader than the '530 patent, so we believe that it's likely that the '530 final decision will again -- will deny the IPR on all claims.

THE COURT:  It was denied when?

MR. KROEGER:  October 31st of last year, and Riverbed was party to that IPR, I believe.  And with regards to the '438 patent, the patent asserted solely against Riverbed, no IPR petition has even been sought for any asserted claims of that patent.

THE COURT:  All right, let me get the response, as whether there's a way -- a rational way to break this up. I mean, if the stay, for instance, were limited to those in which an IPR has been instituted and not, is there some logical -- some --

MR. KENT:  Your Honor, I think your initial -- the

way that at least I read your initial inclinations would resolve this, in large part.

First of all, the standard for granting a stay, which you would hear if we came in front of you, is case simplification.  It is not complete removal of the case, and especially in this instance, where what we're hearing about is an odd claim here or there with respect to the four common patents, that that is not a reason not to wait and see on the decision.

If you were to wait and if you were to stay the case until June, for example, that's after April, at which point this Court will have in front of it the decision on whether to institute those particular petitions.  If those petitions have been instituted, at that point, the argument you just heard about those stray claims not yet being instituted because they're related to the *CommVault* petition, those would go away.

The other point is that the arguments -- whether or not the IPR ends canceling all claims or not, whether something results from the IPR or not, there's still going to be simplification as it comes to claim construction, and that's because of the statements that the patentee makes in those IPRs is actually part of the intrinsic record.  There are statements about claim scope and what the claims cover and do not cover. There are statements about why the patents did not invalidate.

All of that stuff is information that we can argue,

based upon the defendants, disclaims claim scope.  The decision by the Patent Office, whether they be positive or negative, are also evidence.

With respect to written decision on the '908, the finding there wasn't that the cited references didn't disclose a particular element.  What it was is that there was a finding that there was a failure of proof as far as the ability to combine them.  It was a failure of proof.  It wasn't, these things are completely novel.

As to the '438, I can let Riverbed address that, but if you end up this process, the four common patents are substantially reduced, as far as the claims, are completely eliminated, and what you have at issue is the '438.  This is a lot different case when it comes to case management, when it comes to figuring out what claim terms need to be construed.

Looping this back to why we are in front of this Court, the problem that the defendants had is we sat together and we tried to figure out what are the claim terms that we would actually need to propose.  But when you're dealing with common patents, non-common patents, there's a separate dispute that we've raised with the plaintiff over the inadequacies of their infringement contentions.  There's absolutely no detail provided in them that would allow us to figure out precisely what they're accusing, and therefore, what terms we would need to identify for construction.

And that, all of that is the genesis of these competing proposals.  So if this Court were to push off claim construction, were to stay temporarily, at least until we have the decisions on the institution, the decisions on -- the final written decisions on the next batch of IPRs that are up for decision, we'll be in a better place and a better position to propose to your Court, to your Honor, a more reasonable claim construction process.

**THE COURT:**  Well, now, you've indicated that you feel that the allegations are not specific enough to inform the claim construction process.  So is there any reason why that process should not proceed as an exception to any stay?

**MR. KENT:**  We would be happy to proceed with that. We're hoping -- we sent a letter to the plaintiff, we then sent them a reminder.  We've not heard a response yet.  So I'm still hopeful that we'll get a response, you know, "Yes, we'll correct this," but all I've heard is silence.  So if I keep getting silence, then we will move the Court, and we'd be happy for that process to occur while the IPR process is going on.

**THE COURT:**  So what would that process be?  In order to inform and choose claim terms on what's at issue, what is it that you need?

**MR. KENT:**  We need infringement contentions that actually meet this court's Local Rules, and the decisions of the local court, with respect to Local Rules, and that is a

specific identification of what they're accusing.

Right now, what we've gotten are claim charts that have just block quotes from websites without any indication what in there they believe indicates infringement.  There's no identification of, you know, for -- of whole claim terms, why they believe that we literally infringe.

**THE COURT:**  Right.  Any other predicates that need to be established or cleared up in order to proceed expeditiously to claim construction?

**MR. KENT:**  That is the primary.  I think the secondary, related to the IPRs, is what the Patent Office says and what the patent owner says in the IPRs is also relevant intrinsic evidence.

**THE COURT:**  All right, but independent of the IPRs, so far it's the infringement contentions and the adequacy of --

**MR. KENT:**  With respect to Barracuda, and I'll let the other defendants to speak up if there's another thing, but at least for us, that was the thing that was hindering us in our ability to select claim terms.

**THE COURT:**  And have you all had a meet-and-confer about that?

**MR. KENT:**  I've sent two letters, and I've not heard a response from the plaintiff yet.

**MR. KROEGER:**  We received the letter on Thursday of last week, your Honor.  The first letter he's referring to was

a letter sent in the Texas action many months ago, prior that case being stayed and transferred.  We are analyzing the letter that we got a week ago today, and we will be responding timely. We will likely agree to provide some supplementation, but again, that was a week ago.

THE COURT:  All right.  So whatever we do, it seems like there's no reason to stop that process.  Now, whether you can resolve it amongst yourselves or then have to bring some kind of motion, if there is a stay, it seems to me there's no reason to stay that.

MR. KENT:  Your Honor, we're happy for that to go forward.

THE COURT:  Okay.  What else can be done, if there's a stay, for instance, till early June?  What other things can be done that would not be substantially affected by the decision of the PTAB, and yet still advance this litigation? Can you think of anything else?

MR. KROEGER:  Your Honor, I think the defendant should go ahead and provide their invalidity contentions.  That would, you know, at the very least, if any claims are affirmed, we would know what their positions are on those claims, and that way, once the stay is lifted, we'd be ready to proceed with claim construction.

THE COURT:  When are those due, under our rules?

MR. KROEGER:  I believe they're presently due in

March.

**UNIDENTIFIED SPEAKER:**  March the 6th.

**MR. KROEGER:**  March the 6th.

**MR. KENT:**  And your Honor, I think we would disagree in large part because from a -- if there are claims that are cancelled, I mean we could agree, perhaps, to provide invalidity contentions with respect to claims that could not be cancelled or rendered unpatentable, but part of the reason why you stay a litigation is that so a party such as Barracuda, who's facing these allegations on patents that are currently in front of the Patent Office, whose action could end up invalidating the claims, that we don't have to bear the expense of providing invalidity contentions, which are --

**THE COURT:**  Well, so that's the main prejudice, is having to bear the expense of preparing invalidity contentions which might be sort of mooted out.

On the other hand, what you're asking for, at least in the first instance, is to defer providing invalidity contentions by virtue of the stay until, for instance, if we use as a first marker after the May 30th date.  Is that what you're...?

**MR. KENT:**  Yes.

**THE COURT:**  So that would be a delay of three months.

**MR. KENT:**  Not substantial, when you consider that

Realtime currently has a host of cases stayed in this district, has agreed -- actually, not opposed -- in the past a stay with respect to the *Fujitsu Quantum* matter, for example, and that generally, they are suing a lot of people.  They're looking for money damages, which are, if they were awarded, are more than adequate to compensate them.  So there's -- there's no prejudice to Realtime for waiting three months.

THE COURT:  Right, that's a more general point.  Why don't you respond to that?

MR. KROEGER:  Your Honor, I was just -- I understood your comments about proceeding with getting the infringement contentions finalized to be working on efficiency, so we could proceed as expeditiously as possible when the stay is lifted, and if, you know, we're required to do that, you know, on claims that could potentially be cancelled, I think defendant should also bear the burden of helping be as ready to go once the stay is lifted as possible.  Invalidity contentions bear on claim construction just as much as infringement contentions do.  That's why I was thinking we should stick to the current schedule for that if we're going to resolve the infringement contentions issue.

MR. KENT:  Two counterpoints, your Honor.  The first is that a plaintiff is required to have some reasonable basis to bring a suit.  What we got for infringement contentions in front of this Court was the identical copy of what they served

in Eastern District of Texas.  In fact, they didn't serve us, their Northern District of California, with the infringement contentions.  They re-served the local counsel in E.D. Texas with the copy.

Those infringement contentions are the same as they served in Texas and that we complained about.  There's not an substantial workup in there, and any work that was put into that was exactly what was perhaps a little less than required, but at least it was the work that should have been required under Rule 11.

MR. KROEGER:  Your Honor, the substantial basis for bringing the suit is set forth in the Complaint, which is not a bare-bones Complaint.  They have not complained about the adequacy of that Complaint.  They have answered the Complaint; and second --

THE COURT:  Yeah, but the infringement contentions are critical to the process, and so for the case to proceed, that's why we have infringement contentions.  You don't rely solely on the Complaint.  So there's a reason to advance that.

The question I have, I guess, is, you know, how -- what's to be gained, what's to be lost by delaying the invalidity contentions essentially by three months?

Because I'll tell you, I'm not inclined to extend it much beyond that, because I don't see waiting until March 18th, 2019 if there is an institution on the '908, or January 2019.

At some point, I want to start moving, at least laying the predicate for some of this stuff, if not full claim construction.

I don't know what I would do, but if we're talking about a three-month delay, and the argument on their part is that you're not in competition, you're not producing something, there's not a question of sort of losing a competitive position in the market, so the time sensitive element, this is largely an enforcement damages case, there's nothing compelling about some delay.

That's not to say we would always grant a stay in a case such as this, but when we're talking about a short-term, and something to be gained because there are quite a few claims at issue -- there are some that are not, but the majority of the claims seem to be at issue, at least on a couple of the patents, where we're going to get a pretty good indication by end of May, and we'll also know whether proceedings have been instituted in the -- with respect to three or four of the petitions.

We'll know a lot more, and I can make a judgment, but with a warning that I'm sort of inclined -- you know, a stay is not necessarily an all-or-nothing proposition.  I may, and I've done this before, I've stayed a case except to allow for X, Y and Z, things proceed.  I frankly hesitate to keep things at a total standstill if we can get some things

accomplished; but I also don't want to do things in such a piecemeal way that we end up being more complicated than if we didn't.

So that's what I'm going to do.  I'm going to impose a stay until our next status conference, which I want in early June, shortly after the May 30th written decision on the '728, and it will also be after the written decisions on the '530 and the rulings with respect to the institution, or not, of IPR proceedings with respect to four of the petitions.

So Betty, what's a --

**THE CLERK:**  June 14th, at 10:30.

**THE COURT:**  And I will revisit the stay at that point, but I will say, be prepared to start moving, unless I find good reason not to, at least on some fronts.

So I will defer the invalidity contention due date and vacate the March 6th date.  I will direct the parties to resolve, one way or another or bring it by motion, the adequacy of the infringement contentions.  I think that's a first-tier predicate that should proceed, and then let's see where we're at with respect to everything else.

So I'm going to vacate the hearing on the March 1st date that was set for the motion to stay, since I'm ruling on it.  Yeah, the stay will apply to all three cases.

I understand you do have a settlement conference also coming up in --

**MR. KROEGER:**  February 8, I believe.

**THE COURT:**  February 8?  All right, well, hopefully that will moot everything else out, which would be the ideal scenario, but if not, we will reconvene in June, and the parties should be prepared to think about what can be done constructively, if I grant any kind of a stay, what can be done constructively that would advance the case without imposing needless enormous burdens on each side.

**MR. KROEGER:**  Your Honor, just for clarification, since you granted Barracuda's motion for stay, at least in part, there's no need for us to file an opposition to that motion, correct?

**THE COURT:**  That's right.  I mean, in a way, I'm ruling based on your opposition here, and if you have any more comments, you know, I'll hear it, out of fairness to you, but --

**MR. KROEGER:**  I have an associate who's already working on an opposition.  He would be mad at me if I didn't at least ask the questions.  So thank you, your Honor.

**THE COURT:**  Great.  Thank you, and thank your associate, too.

All right, so we'll see you back here in -- was it June?

**THE CLERK:**  June 14th.

**THE COURT:**  -- June 14th at 10:30, and good luck in

your discussions with Magistrate Judge Beeler.

**MR. KROEGER:**  Thank you, your Honor.

**MR. KENT:**  Thank you, your Honor.

**THE COURT:**  Thank you.

11:06 a.m.

---o0o---

**CERTIFICATE OF TRANSCRIBER**


I, Leo Mankiewicz, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____  02/09/2017

Signature of Transcriber        Date